**UNITED STATES of America, Appellee,**

v.

**Felipe BONILLA ROMERO, a/k/a "Felo Bonilla," Defendant, Appellant.**

No. 87-1052.

United States Court of Appeals, First Circuit.

Heard Sept. 15, 1987.

Decided Dec. 30, 1987.

Rehearing and Rehearing En Banc Denied Feb. 17, 1988.

Frank A. Ortiz with whom Francisco M. Lopez–Romo, San Juan, P.R., was on brief, for defendant, appellant.

Juan A. Pedrosa, Asst. U.S. Atty., Criminal Div., San Juan, P.R., with whom Jose A. Quiles, Acting U.S. Atty., Hato Rey, P.R., was on brief, for appellee.

Before BOWNES, TORRUELLA and SELYA, Circuit Judges.

TORRUELLA, Circuit Judge.

Felipe Bonilla Romero appeals his conviction and subsequent sentence on four counts of federal drug and firearm violations.  We affirm.

During a surveillance of Bonilla's home on September 18, 1985, a Puerto Rico

government agent witnessed evidence of two drug transactions. The agent subsequently saw Bonilla leave his home by car in possession of a pistol and communicated this fact to other Puerto Rico officers. These officers arrested appellant and, during a search of his car, found the pistol and small amounts of cocaine and heroin. He was then arraigned on weapons and drug charges under Puerto Rico law and released on bail.

The following day a warrant for the search of Bonilla's home was issued on the basis of affidavits of two officers involved in the previous day's surveillance and arrest and the evidence seized during the arrest. Appellant's home was searched, another gun and approximately one-tenth of a kilogram of heroin and cocaine were found, and appellant again was arrested. He was arraigned on further weapons and drug charges under Puerto Rico law.

Five months later, on February 19, 1986, appellant was indicted on the basis of this evidence in the United States District Court for the District of Puerto Rico on one count of possession with intent to distribute heroin and one count of possession with intent to distribute cocaine, both pursuant to 21 U.S.C. § 841(a)(1), and on two counts of receiving firearms in interstate commerce by a known felon. A fifth count, not at issue here, was later dismissed.

After a suppression hearing conducted at the end of April, 1986, a judge of the Superior Court of Puerto Rico announced he would grant appellant's motion to suppress, for purposes of the local prosecution, the evidence seized on September 18 and 19. The judge seriously doubted the veracity of the officers whose testimony was presented to support the warrantless search of Bonilla's car and whose affidavits were the basis of the search warrant used to search his home. The local prosecution subsequently was dismissed and the decision to suppress is on appeal to the Supreme Court of Puerto Rico.

Appellant was not similarly successful in federal district court. The district judge there held that the federal court was not bound by the decision of the local court to suppress the evidence. He held a hearing *de novo* on the matter and denied appellant's motion to suppress, 639 F.Supp. 1021. At a subsequent bench trial, Bonilla was convicted on all four counts. He received the maximum sentence allowed by statute of fifteen years each, to run consecutively, on the heroin and cocaine charges, and concurrent five year sentences on each of the two firearms charges.

Appellant's allegations can be grouped into five issues. He alleges (1) the government was allowed to relitigate a suppression of evidence issue in violation of the double jeopardy clause; (2) the relitigation of the issue was violative of collateral estoppel principles; (3) he was denied a fair hearing on the suppression issue; (4) the district court abused its discretion in failing to suppress the evidence; and (5) the imposition of the consecutive maximum sentences on the two drug charges was contrary to statute and subjected him to cruel and unusual punishment. We address each allegation in turn below.

*Double Jeopardy*

■ Appellant contends the district court was precluded from hearing the federal charges against him due to the restrictions imposed by the double jeopardy clause of the fifth amendment of the United States Constitution. He concedes that his trial in the Puerto Rico Superior Court never commenced, yet argues that the dismissal of charges there *prior* to trial was equivalent to a dismissal for insufficiency of evidence *during* trial. Since the latter recently has been held to be a bar to further prosecution, *see Smalis v. Pennsylvania*, 476 U.S. 140, 106 S.Ct. 1745, 90 L.Ed. 2d 116 (1986), he argues further prosecution of the charges against him is similarly barred. Appellant maintains that "there is no rational distinction" for double jeopardy purposes between a dismissal due to the exclusion of indispensable evidence after a pretrial hearing, and dismissal during trial after a successful objection to the introduction of the same evidence. He suggests that the double jeopardy clause demands the same outcome regardless of whether a defendant has ever been put to trial.

The double jeopardy clause, however, is not a game rule designed to ensure uniformity of result regardless of pretrial strategy or rules of procedure. Rather, the basic principle underlying the constitutional prohibition against double jeopardy is that "the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty." *Green v. United States*, 355 U.S. 184, 187–88, 78 S.Ct. 221, 223, 2 L.Ed.2d 199 (1957). *See also Serfass v. United States*, 420 U.S. 377, 387–88, 95 S.Ct. 1055, 1062, 43 L.Ed.2d 265 (1975); *United States v. Jorn*, 400 U.S. 470, 479, 91 S.Ct. 547, 554, 27 L.Ed.2d 543 (1971). A defendant who successfully argues a pretrial motion is not subjected to the "embarrassment, expense and ordeal" of a trial. *See Serfass*, 420 U.S. at 391, 95 S.Ct. at 1064. Nor does he suffer the "anxiety and insecurity" of having his guilt or innocence finally determined. Indeed, it is only through repeated exposure to *trial* that the state enhances the possibility that the defendant "even though innocent ... may be found guilty," 355 U.S. at 188, 78 S.Ct. at 223, and it is only at trial that one is truly "put in jeopardy of life or limb." U.S. Const. amend. V.

It is now well-settled law, therefore, that jeopardy "attaches" when a trial commences; that is, when a jury is sworn or empanelled or, in a bench trial, when the judge begins to hear evidence. *Willhauck*

*v. Flanagan*, 448 U.S. 1323, 1325–26, 101 S.Ct. 10, 11–12, 65 L.Ed.2d 1147 (1980); *United States v. Martin Linen Supply Co.*, 430 U.S. 564, 569, 97 S.Ct. 1349, 1353, 51 L.Ed.2d 642 (1977); *Serfass*, 420 U.S. at 388, 95 S.Ct. at 1062; *Illinois v. Somerville*, 410 U.S. 458, 471, 93 S.Ct. 1066, 1074, 35 L.Ed.2d 425 (1973) (White, J., dissenting). We know of no case, and appellant has referred to none, in which jeopardy has been found to have attached prior to either of these events.[1] Appellant believes he is asking us "to break new ground"; he is, however, asking us to bring down the house. We decline to do so. We thus hold that jeopardy did not attach as a result of the suppression of evidence ordered after hearing by the Puerto Rico Superior Court and the subsequent dismissal of charges under Puerto Rico law. Therefore, federal officials did not violate appellant's constitutional right not to be put into jeopardy twice for the same crime.[2]

*Collateral Estoppel*

Appellant alternatively argues that, regardless of whether jeopardy attached, relitigation of the suppression issue was barred by the principle of collateral estoppel (now more accurately referred to as "issue preclusion"). It is true that the Supreme Court, in *Ashe v. Swenson*, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970), held that collateral estoppel principles can be a bar to further litigation of an issue decided in a criminal defendant's favor. However, that holding, involving relitigation of an issue necessarily determined in the defendant's favor as a result of his acquittal after trial on a prior charge, was squarely based on the Fifth Amendment's

1. The Supreme Court has declined to hear a double jeopardy challenge to a state court decision that an acquittal on the basis of insanity entered prior to the empanelling of a jury did not bar a rehearing on the same issue when the hearing judge had made an error of law. *Rodrigues v. Hawaii*, 67 Hawaii 70, 679 P.2d 615, *cert. denied*, 469 U.S. 1078, 105 S.Ct. 580, 83 L.Ed.2d 691 (1984).

2. It should be noted that this issue alternatively could be decided on the basis of our recent decision in *United States v. López Andino*, 831 F.2d 1164, 1168 (1st Cir.1987), where we held that, despite Puerto Rico's constitutional status

as a territory, it is a separate sovereign for the limited purpose of the double jeopardy clause. That case recognized that Puerto Rico has been given such complete control over its local criminal affairs that it may freely prosecute criminal behavior under its own laws regardless of whether the federal government prosecutes the same behavior under federal law. While I personally disagreed with this holding, *see id.* at 1172 (Torruella, J., concurring), it is the law of this Circuit. Therefore, even if appellant actually had been tried under Puerto Rico law, such trial would not have been a bar to the federal prosecution.

guarantee against double jeopardy. *Id.* at 445, 90 S.Ct. at 1195. Since, in this case, jeopardy never attached during the local prosecution, *Ashe* is not controlling.

One circuit, however, has suggested that collateral estoppel principles prohibit a government entity from relitigating a pretrial suppression order in a criminal case. *United States ex rel. DiGiangiemo v. Regan,* 528 F.2d 1262, 1265–67 (2d Cir.1975) (denial of suppression of evidence upheld on other grounds), *cert. denied,* 426 U.S. 950, 96 S.Ct. 3172, 49 L.Ed.2d 1187 (1976). In that opinion, while agreeing that *Ashe* is inapplicable when jeopardy has not attached, Judge Friendly indicated that, in criminal proceedings, collateral estoppel is nonetheless required by due process regardless of whether jeopardy has attached. *Id.* at 1266. *See also United States v. Evans,* 655 F.Supp. 243 (E.D.La.1987) (adopting Judge Friendly's suggestion as basis for holding government prohibited from relitigating admissibility of evidence).[3]

While recognizing the merits of Judge Friendly's argument, we find it unnecessary to decide this important constitutional issue at this time inasmuch as the requirements of collateral estoppel are not satisfied by the facts of this case. The requirements of that doctrine include, *inter alia,* that the party to be precluded from relitigating an issue decided in a previous litigation was either a party or in privity with a party to that prior litigation. *See generally* 1B J. Moore, J. Lucas & T. Currier, *Moore's Federal Practice* ¶¶ 0.441[3], 0.443[1] (2d ed. 1984); Restatement (Second) of Judgments §§ 27, 39, 41 (1982). In this case, the requirement was not satisfied since the federal prosecutors were neither a party, nor in privity with a party, to the suppression hearing in the Puerto Rico Superior Court.

Under the concept of privity, a non-party to an action nonetheless may be bound by the issues decided there if it substantially controls, or is represented by, a party to the action. Restatement (Second) of Judgments §§ 39, 41 (1982). *See Montana v. United States,* 440 U.S. 147, 154, 99 S.Ct. 970, 974, 59 L.Ed.2d 210 (1979); *Chicago, R.I. & P. Ry. Co. v. Schendel,* 270 U.S. 611, 618–19, 46 S.Ct. 420, 423, 70 L.Ed. 757 (1926); *see also Mother's Restaurant, Inc. v. Mama's Pizza, Inc.,* 723 F.2d 1566, 1572 (Fed.Cir.1983) and cases cited therein. The party estopped due to representation by a party to the action must have been "so closely related to the interest of the party to be fairly considered to have had his day in court." *In re Gottheiner,* 703 F.2d 1136 (9th Cir.1983). There must be a "substantial identity" of the parties such that the party to the action was the virtual representative of the party estopped. *Chicago, R.I. & P. Ry. Co.,* 270 U.S. at 621, 46 S.Ct. at 424; *Pan American Match Inc. v. Sears, Roebuck and Co.,* 454 F.2d 871 (1st Cir.1972).

Whether a party is virtually representative of a non-party is a question of fact determined on a case-by-case basis. *United States v. ITT Rayonier, Inc.,* 627 F.2d 996, 1003 (9th Cir.1980); *Aerojet–General Corp. v. Askew,* 511 F.2d 710, 719 (5th Cir.1975), *cert. denied,* 423 U.S. 908, 96 S.Ct. 210, 46 L.Ed.2d 137, *reh'g denied,* 423 U.S. 1026, 96 S.Ct. 470, 46 L.Ed 2d 400 (1975). In particular, the source of authority of two government entities is not dispositive of whether they are in privity. *See Davis v. Eide,* 439 F.2d 1077, 1078 (9th Cir.) (city police officers not bound by issue determined by criminal proceeding in which the state is a party since no measure of control over the proceeding and no interest in its outcome), *cert. denied,* 404 U.S. 843, 92 S.Ct. 139, 30 L.Ed.2d 78 (1971); *Clark v. Richardson,* 431 F.Supp. 105, 122 (D.N.J. 1977) (non-party towns not bound by issue determined in suit which named state and other towns); *cf. United States v. ITT Rayonier, Inc.,* 627 F.2d at 1003 (federal and state agencies in privity due to identical interests and "sufficiently close" relation-

---

**3.** The only other circuits to address Judge Friendly's argument have refused to express either their approval or disapproval, although the Third Circuit discussed several important and conflicting considerations implicated by that argument. *See United States v. Hatrak,* 588 F.2d 414 (3d Cir.1978); *see also United States v. Franzen,* 659 F.2d 741 (7th Cir.1981).

ship in state proceedings); *Aerojet*, 511 F.2d at 719–20 (because both non-party county and party state boards desired that disputed land be conveyed to county, county in "such close relationship" to state boards and thus bound by outcome of litigation). Therefore, despite extensive arguments by both the government and appellant, and recent decisions by this court,[4] regarding Puerto Rico's sovereignty status as a United States territory, resolution of the status issue does not determine whether the federal prosecutors are bound by a pretrial suppression order issued by a Puerto Rico court. Rather, we must determine whether there was a close or significant relationship between the federal and Puerto Rico prosecutors during the local suppression hearing or whether the federal authorities controlled or actively participated in that hearing such that their interests in enforcing federal law were sufficiently represented.

Appellant presents no evidence whatsoever that federal prosecutors were, or should have been, involved in any way in the local prosecution. There is no indication they provided assistance or advice to the local authorities or at any time even discussed the matter. Federal prosecutors had no reason to believe that a Puerto Rico Superior Court judge would be deciding any matters affecting a federal prosecution. The initial suppression hearing concerned purely local charges over which the federal enforcement officials had no authority and thus no interest. We see no reason why the principles of fairness, justice, and judicial economy embodied in the doctrine of collateral estoppel require that this doctrine be expanded to bind a party so remote from the action decided. Therefore, without deciding whether collateral estoppel is generally applicable to criminal prosecutions in the absence of attachment of jeopardy, we hold that, under the facts of this case, Puerto Rico and federal law enforcement officials were not in privity during the local pretrial suppression hearing.

*Fair Trial*

■ Appellant contends he was denied a fair trial by the district court during its suppression hearing because it: (1) denied defendant's request for a continuance to obtain the transcript from the local suppression hearing which could have been used to impeach hostile witnesses; (2) denied defendant an overnight continuance to produce corroborating witnesses; and (3) ruled defendant had the burden of going forward to prove the illegality of the searches and seizures.

A denial of a continuance by a district court will not be reversed absent a clear showing of abuse of discretion. *Avery v. Alabama*, 308 U.S. 444, 446, 60 S.Ct. 321, 322, 84 L.Ed. 377 (1940); *Real v. Hogan*, 828 F.2d 58, 63 (1st Cir.1987); *United States v. Reeves*, 730 F.2d 1189, 1193 (8th Cir.1984); *Reiss v. United States*, 324 F.2d 680 (1st Cir.1963). No such abuse is evident in the record before us, which indicates appellant had ample opportunity to obtain a transcript and witnesses. The local suppression hearing was concluded on April 30, 1986 at which time the Superior Court judge announced he was going to grant defendant's motion to suppress the evidence for purposes of the local trial. Defendant's federal trial was scheduled to begin May 12, 1986. The defense thus had twelve days in which to transcribe the tapes of the local suppression hearing for use at the district court trial. Instead, on May 6, nearly three months after the indictment on federal charges and only six days prior to the scheduled trial date, appellant moved for a continuance and for suppression of evidence. The motion for a continuance was heard on May 12. At that time, appellant asserted a continuance was necessary to obtain the Superior Court's order and opinion and the transcript from that hearing. The essence of his argument was that federal law required the district court to be bound by the local court's decision regarding the suppression issue. The district court properly rejected that argument and scheduled a hearing on the suppression motion for the following day. We

4. *See, e.g., supra* n. 2.

note that the denial of the continuance also was properly based, in part, on the recognition that several witnesses had travelled a substantial distance to be present for the trial which had been scheduled to begin that day. Also relevant is the fact that appellant did not argue that he needed the transcript from the local suppression hearing for impeachment purposes. It was not until after the suppression hearing began in federal court on the following day that he expressed that need. No specific request for a continuance was made at that time. Finally, we call attention to the fact that the district court waited until after it had received the Superior Court's opinion on that court's decision to suppress the evidence before it rendered its own opinion on the matter.

The foregoing demonstrates that the district court acted well within its discretionary authority in denying appellant's motion for a continuance. Appellant had based his request primarily on the incorrect belief that the district court would be constrained by the Superior Court's decision due to principles of double jeopardy or collateral estoppel. He never clearly asserted his need of the ·transcript for impeachment purposes, which he nonetheless could have obtained prior to the hearing and without a continuance. Finally, the district court, while not bound by the suppression decision of the Superior Court, showed proper deference by considering that court's opinion prior to issuing its own decision.

Appellant's contention that the district court abused its discretion denying appellant's request for an overnight continuance to produce witnesses is without merit. We need only note that the hearing was held on the defendant's motion, he had ample time to prepare for that hearing, no new issues were raised there, and yet he failed to subpoena a single witness.

■ Appellant's final allegation demonstrates a misunderstanding of the difference between burden of production and burden of persuasion. When suppression of evidence is at issue, the burden is initially upon the party seeking suppression to go forward with specific evidence demonstrating the evidence is tainted. *Alderman v. United States*, 394 U.S. 165, 183, 89 S.Ct. 961, 972 22 L.Ed.2d 176 (1969). When it has acted without a warrant, the ultimate burden of persuasion is then upon the government to show that its evidence is not tainted. *Id.* The district court, therefore, properly placed the burden of going forward on the defendant.

## Failure to Suppress Evidence

Appellant contends that the district court abused its discretion by failing to suppress evidence seized during his warrantless arrest on September 18, 1985 and during the search of his apartment pursuant to a warrant on the following day. He asserts the officers did not have probable cause to arrest him and that the search warrant was based on affidavits which contained false statements and failed to state the date on which alleged drug transactions were observed.

■ Probable cause exists when arresting officers have " 'facts and circumstances within [their] knowledge and of which they had reasonably trustworthy information ... sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed." *Draper v. United States*, 358 U.S. 307, 313, 79 S.Ct. 329, 333, 3 L.Ed.2d 327 (1959) (quoting *Carroll v. United States*, 267 U.S. 132, 162, 45 S.Ct. 280, 288, 69 L.Ed. 543 (1925)); *see also Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983). Appellant was a known felon with seven prior felony convictions for drug and weapons violations. He concedes he was observed, by a police officer, entering a car with a pistol and that this information was communicated by radio to the arresting officers who were told to arrest him. The police officer testified he was aware appellant did not have a license to carry a gun. Nonetheless, appellant argues that the arresting officers lacked probable cause since they were not told whether he had a license or temporary permission to carry the pistol and did not know whether he had disposed of the pistol between the time when he entered the car

**46**

and the time when he was arrested. We disagree. To require police officers to investigate every *possibility* of innocence prior to effectuating the arrest of a known felon carrying a clearly dangerous weapon would be an undue burden on the police force's efforts to protect the safety of the public.

■ We also hold that the district court did not abuse its discretion in failing to find that the warrant used to search appellant's apartment was defective. A reviewing court must sustain the validity of a search warrant if under the "totality of circumstances" the issuing magistrate could find there was probable cause that criminal evidence could be found as a result of the search pursuant to the warrant. *Illinois v. Gates*, 462 U.S. at 238–39, 103 S.Ct. at 2332–33. In this case, the warrant was issued upon the affidavit of an experienced police officer who witnessed activity which was consistent with drug transactions at appellant's home. Although that affidavit failed to specify the date on which these transactions occurred, it was corroborated by another officer whose affidavit did contain the relevant date. When an affidavit in support of a search warrant does not contain the date of the activities therein alleged, but is factually related to other information before the magistrate which does contain the date, it is permissible to draw the inference that the events took place in close proximity to the date given. *United States v. Salvucci*, 599 F.2d 1094, 1096 (1st Cir.1979); *United States v. Holliday*, 474 F.2d 320, 322 (10th Cir.1973). Furthermore, the magistrate examined both affiants personally. Finally, we do not question the district court's assessment of the veracity of the police officers. Therefore, we conclude the district court acted properly in upholding the validity of the search warrant of appellant's apartment and the evidence seized pursuant to that search.

*Consecutive Sentences*

Appellant was convicted, *inter alia*, of two violations of 21 U.S.C. § 841(a)(1) (1984) (amended 1986) which makes it a crime for any person to possess with intent to distribute "a controlled substance." He was sentenced pursuant to § 841(b)(1)(B) which mandates imprisonment of not more than fifteen years "[i]n the case of a controlled substance in schedule I or II...." Heroin is a schedule I drug while cocaine is a schedule II drug. The district court imposed the maximum sentence of fifteen years for each violation, the terms to run consecutively.

Appellant contends the district court erred by not treating these violations as a single offense. He argues that since the heroin and cocaine were found in one bag at the same time and place, the drugs together constituted a single "controlled substance" as that term was used by Congress in the statute. Alternatively, appellant argues the imposition of consecutive maximum sentences for the two violations constituted cruel and unusual punishment in violation of the eighth amendment of the Constitution.

■ Congress may authorize the imposition of cumulative punishments for separate criminal offenses occurring in the same act. *Albernaz v. United States*, 450 U.S. 333, 344, 101 S.Ct. 1137, 1145, 67 L.Ed.2d 275 (1981). The double jeopardy clause is not implicated so long as each statutory violation requires proof of an element or fact which the other does not. *Brown v. Ohio*, 432 U.S. 161, 168, 97 S.Ct. 2221, 2226, 53 L.Ed.2d 187 (1977); *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932). Otherwise, the critical inquiry for the trial court is whether Congress intended to punish each statutory violation separately. *Jeffers v. United States*, 432 U.S. 137, 155, 97 S.Ct. 2207, 2218, 53 L.Ed.2d 168 (1977).

■ It is clear that each of the two violations in question here requires proof of an independent fact; *i.e.*, the identity of the drugs themselves. The second, fourth, fifth, and sixth circuits have all concluded that, under these circumstances, Congress intended simultaneous possession of different controlled substances to be separate offenses under 21 U.S.C. § 841(a)(1). *See United States v. De Jesús*, 806 F.2d 31,

35–37 (2d Cir.1986) (upholding consecutive sentences under § 841(a)(1) for possession of cocaine and heroin with intent to distribute), *cert. denied,* —— U.S. ——, 107 S.Ct. 1299, 94 L.Ed.2d 155 (1987); *United States v. Grandison,* 783 F.2d 1152, 1155–56 (4th Cir.) (same), *cert. denied,* —— U.S. ——, 107 S.Ct. 160, 93 L.Ed.2d 99 (1986); *United States v. Davis,* 656 F.2d 153 (5th Cir.1982) (upholding consecutive sentences under § 841(a)(1) for possession of quaaludes and marijuana with intent to distribute); *United States v. Pope,* 561 F.2d 663, 669 (6th Cir.1977) (reversing conviction on other grounds but finding that possession of heroin, a schedule I controlled substance, and possession of methadone, a schedule II controlled substance, are separate offenses under § 841(a)(1)). We believe these holdings are consistent with the plain meaning of § 841(a)(1) which creates a violation for possession of "a controlled substance," not for "a controlled substance or group of controlled substances." We also agree that this reading of the statute is most consistent with Congress' expressed intent to "give maximum flexibility to judges, permitting them to tailor the period of imprisonment, as well as the fine, to the circumstances involved in the individual case." *Davis,* 656 F.2d at 159 (quoting H.R.Rep. No. 91–1444, 91st Cong., 2d Sess., *reprinted in* [1970] U.S.Code Cong. & Admin. News 4566, 4567). We therefore hold that the imposition of consecutive sentences for the simultaneous possession of a Schedule I and a Schedule II drug with intent to distribute is neither barred by the double jeopardy clause nor inconsistent with congressional intent in enacting section 841(a)(1).

Finally, appellant's contention that consecutive maximum sentences for the § 841(a)(1) violations constitute cruel and unusual punishment is without merit. There is no evidence in the record that the trial judge employed improper assumptions, mechanically imposed sentence or refused to exercise his discretion to individualize the sentence. *Cf. United States v. López–Gonzáles,* 688 F.2d 1275 (9th Cir. 1982); *United States v. Wardlaw,* 576 F.2d 932 (1st Cir.1978). We agree that, on the record before us, a thirty year sentence for possession of less than one-half pound of narcotics may appear harsh. As Justice Sutherland wrote:

> Under the circumstances, so far as disclosed, it is true that the imposition of the full penalty of fine and imprisonment upon each count seems unduly severe; but there may have been other facts and circumstances before the trial court properly influencing the extent of punishment. In any event, the matter was one for that court, with whose judgment there is no warrant for interference on our part.

*Blockburger,* 284 U.S. at 305, 52 S.Ct. at 182. Therefore, since the sentence imposed is not grossly disproportionate to the crimes committed and is within statutory limits, the district court neither abused its discretion nor subjected appellant to cruel and unusual punishment.

*Affirmed.*