# United States Court of Appeals
## For the First Circuit

No. 21-1718

YANIRA SANTIAGO-MARTÍNEZ, in representation of minor son J.R.S.;
RAYMOND RAMÍREZ-CARABALLO, in representation of minor son
J.R.S.,

Plaintiffs, Appellants,

v.

FUNDACIÓN DAMAS, INC, d/b/a HOSPITAL DAMAS,

Defendant, Appellee,

HOSPITAL DAMAS, INC., or alternatively, John Doe Corporation,
d/b/a Hospital Damas; DR. JORGE MARTÍNEZ-COLÓN, in
representation of his conjugal partnership; NORMA SOTO, in
representation of her conjugal partnership; JOHN DOES 1, 2 and
3; A, B and C CORPORATIONS; UNKNOWN INSURANCE COMPANIES A
through H,

Defendants.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Gustavo A. Gelpí, U.S. District Judge]

Before

Lipez and Montecalvo, Circuit Judges,
Burroughs,* District Judge.

* Of the District of Massachusetts, sitting by designation.

David Efron, with whom Law Offices of David Efron, P.C. was on brief, for appellants.

Freddie Pérez-González, with whom Freddie Pérez-González & Assoc., P.S.C. was on brief, for appellees.

———————————

February 16, 2024

———————————

**LIPEZ**, <u>**Circuit Judge**</u>.    Appellants Yanira Santiago-Martínez and Raymond Ramírez-Caraballo are the parents of a child who suffered severe and permanent injuries at birth because of what they claim was the negligence of medical providers at Hospital Damas, a facility allegedly operated by appellee Fundación Damas, Inc. ("Fundación").    Concluding that appellants were "virtually represented" in earlier proceedings by the parents of another child who similarly suffered catastrophic injuries during birth at the hospital, the district court granted summary judgment for Fundación based on the doctrine of issue preclusion.    Under controlling Supreme Court precedent, however, the theory of virtual representation on which the district court relied is inapplicable to this case.    We therefore reverse the grant of summary judgment and remand the case for further proceedings.

## I.

In May 2010, Santiago-Martínez was 36 weeks pregnant with her son, J.R.S., when she was admitted to Hospital Damas. Complications arose due to the alleged negligence of her hospital providers, and J.R.S. suffered life-altering injuries during his delivery.  Santiago-Martínez and Ramírez-Caraballo (collectively, the "Parents") initially sued Hospital de Damas Inc. ("HDI") for medical malpractice, aiming to hold HDI vicariously liable for the

- 3 -

negligent acts of the medical staff who treated J.R.S.[1] The Parents' theory of liability turned on the allegation that HDI owned and operated Hospital Damas when the alleged malpractice occurred.

HDI moved to dismiss the complaint, noting that HDI declared chapter 11 bankruptcy in September 2010, so the Parents needed to file a proof of claim in that bankruptcy proceeding to retain their right to sue. Because the Parents failed to make such a filing, HDI argued their claims were discharged upon confirmation of the company's bankruptcy plan on May 15, 2012. In turn, the Parents amended their complaint to substitute Fundación for HDI as the real owner and operator of Hospital Damas.

Fundación then moved for summary judgment based on the doctrine of issue preclusion, arguing that the court in charge of HDI's bankruptcy petition had already determined that HDI owned and operated the hospital after 1987. See In re Hosp. de Damas, Inc., No. 10-8844 (EAG), 2012 WL 1190651, at *5-6 (Bankr. D.P.R. Apr. 9, 2012) (hereinafter "Bankruptcy Opinion").[2] And because

---

[1] To be precise, the Parents sued on behalf of J.R.S. They also named other defendants in their suit, but those parties are irrelevant to the issues raised in this appeal.

[2] The relevant bankruptcy court finding provided that:

> Fundación Damas, a not-for-profit corporation, owns the real property on which the hospital facility known as Hospital Damas is located. Prior to 1987, it operated Hospital Damas. In 1987, Fundación . . . incorporated [HDI] and then leased

- 4 -

Fundación is an entity separate from HDI, Fundación asserted it could not be vicariously liable for the malpractice at issue here. The Parents, in response, argued that issue preclusion did not apply because neither they nor Fundación were parties in the earlier bankruptcy proceeding.

The district court agreed with Fundación. Though the Parents were not involved with HDI's bankruptcy petition, the court identified people with similar medical malpractice claims ("medical malpractice creditors") who had litigated the issue of HDI's ownership of the hospital in the bankruptcy court. Those medical malpractice creditors, the district court reasoned, shared the same interest as the Parents here. See Santiago-Martínez v. Fundación Damas, Inc., 540 F. Supp. 3d 175, 181 (D.P.R. 2021). According to the district court, that equivalence meant that the medical malpractice creditors "virtually represented" the Parents in the earlier litigation and, hence, the Parents could not relitigate the issue of whether Fundación owned and operated Hospital Damas. Id. at 181-82. Based on that determination, the district court granted summary judgment for Fundación because the Parents' claims were premised on Fundación's vicarious liability

---

the hospital facility to [HDI]. . . . [HDI] has been operating Hospital Damas since 1987.

Bankruptcy Opinion, 2012 WL 1190651, at *5-6.

as owner and operator of the hospital at the time of the alleged malpractice. Id.

This appeal followed.

## II.

We review the district court's entry of summary judgment and its application of issue preclusion de novo. See Delgado Echevarría v. AstraZeneca Pharm. LP, 856 F.3d 119, 126 (1st Cir. 2017). Federal common law governs the question of issue preclusion here because the finding Fundación argues is entitled to preclusive effect was made by a federal bankruptcy court. See Vargas-Colón v. Fundación Damas, Inc., 864 F.3d 14, 25 (1st Cir. 2017); see also Taylor v. Sturgell, 553 U.S. 880, 891 (2008) ("The preclusive effect of a federal-court judgment is determined by federal common law.").

Issue preclusion bars repetitive litigation between the same parties over an issue decided in a prior case. Taylor, 553 U.S. at 892. By preventing parties from contesting matters already resolved by a court, issue preclusion saves parties the unnecessary expense of duplicative lawsuits, minimizes the risk of inconsistent decisions, and conserves judicial resources. Id. But this doctrine applies only if the loser had a "full and fair opportunity to litigate" the issue in the earlier proceeding. Id. (quoting Montana v. United States, 440 U.S. 147, 153-54 (1979)).

"A person who was not a party to a suit generally has not had a 'full and fair opportunity to litigate' the claims and issues settled in that suit." Id. The extension of issue preclusion to nonparties thus runs up against the "deep-rooted historic tradition that everyone should have his own day in court." Id. at 892-93 (quoting Richards v. Jefferson Cnty., 517 U.S. 793, 798 (1996)). Hence, issue preclusion does not usually apply to those not party to the relevant prior litigation.

Yet this rule against nonparty preclusion is not absolute. The Supreme Court has identified six exceptions that apply in "limited circumstances," most of which depend on some kind of relationship existing between the party that previously litigated an issue and the party seeking to relitigate that same issue. Id. at 898 (quoting Martin v. Wilks, 490 U.S. 755, 762 n.2 (1989)).[3] Some courts, including our own, had previously

---

[3] First, "[a] person who agrees to be bound by the determination of issues in an action between others is bound" by the terms of that agreement. Taylor, 553 U.S. at 893 (alteration in original) (quoting 1 Restatement (Second) of Judgments § 40 (Am. L. Inst. 1980)). Second, pre-existing "substantive legal relationship[s]" between the party to be bound and the party in the prior proceeding may justify nonparty preclusion. Id. at 894 (alteration in original) (quoting David Shapiro, Civil Procedure: Preclusion in Civil Actions 78 (2001)). Third, and perhaps closest to the district court's formulation of "virtual representation" in this case, a nonparty may be bound by a prior judgment in certain circumstances if "she was 'adequately represented by someone with the same interests who [wa]s a party' to the suit." Id. (alteration in original) (quoting Richards, 517 U.S. at 798). Fourth, "a nonparty is bound by a judgment if she 'assume[d] control' over the litigation in which that judgment was rendered."

recognized a "virtual representation" exception to the rule against nonparty preclusion. See, e.g., Gonzalez v. Banco Cent. Corp., 27 F.3d 751, 761-62 (1st Cir. 1994); United States v. Bonilla Romero, 836 F.2d 39, 43 (1st Cir. 1987). Put broadly, that exception permitted nonparty preclusion if there was a "'substantial identity' of the parties such that the party to the action was the virtual representative of the party estopped," Bonilla Romero, 836 F.2d at 43, and the balance of equities favored preclusion, Gonzalez, 27 F.3d at 762. But the Supreme Court explicitly rejected the "virtual representation" theory in Taylor v. Sturgell, 553 U.S. at 898-901.

There, antique airplane aficionado Brent Taylor sued the Federal Aviation Administration ("FAA") for the release of documents about the F-45, a vintage airplane. Id. at 887-88. The district court entered summary judgment against Taylor's Freedom of Information Act ("FOIA") claim because Taylor's friend -- Greg Herrick -- had brought (and lost) a similar FOIA suit against the FAA seeking the same records. Id. Though Taylor was not a party

---

Id. at 895 (alteration in original) (quoting Montana, 440 U.S. at 154). Fifth, preclusion is appropriate "when a person who did not participate in a litigation later brings suit as the designated representative of a person who was a party to the prior adjudication." Id. Sixth, special statutory schemes may "expressly foreclos[e] successive litigation by nonlitigants . . . if the scheme is otherwise consistent with due process." Id. (alteration and omission in original) (quoting Martin, 490 U.S. at 762 n.2).

to Herrick's earlier suit, the district court held that Herrick virtually represented Taylor's interests.  Id. at 889.  After all, the two friends sought the same documents, used the same lawyer, and even shared discovery materials.  Id.  The D.C. Circuit affirmed, and the Supreme Court granted certiorari.

In reversing, the Court emphasized "the general rule that a litigant is not bound by a judgment to which she was not a party."  Id. at 898.  Justice Ginsburg, writing for a unanimous Court, rejected the notion that preclusion exists where "the relationship between a party and a non-party is 'close enough' to bring the second litigant within the judgment."  Id.  That sort of fact-bound balancing test, the Court explained, gives district judges little guidance in deciding whether a party's relationship with a non-party is sufficiently close to trigger preclusion.  Id. at 901.  And "close enough" does not cut it when due process is on the line.  In answering preclusion questions, "'crisp rules with sharp corners' are preferable to a round-about doctrine of opaque standards."  Id. (quoting Bittinger v. Tecumseh Prods. Co., 123 F.3d 877, 881 (6th Cir. 1997)).

The Court further distinguished the "representative suit" exception (that is, Taylor's third exception) from the theory of "virtual representation."  Id. at 900-01.  Under the "representative suit" exception, nonparty preclusion is appropriate only if: "(1) The interests of the nonparty and her

representative are aligned, and (2) either the party understood herself to be acting in a representative capacity or the original court took care to protect the interests of the nonparty." Id. at 900 (first citing Hansberry v. Lee, 311 U.S. 32, 43 (1940); and then citing Richards, 517 U.S. at 801-02). Additionally, the "representative suit" exception sometimes requires "notice of the original suit to the persons alleged to have been represented." Id. (citing Richards, 517 U.S. at 801). While class actions meet these requirements due to the "procedural safeguards contained in Federal Rule of Civil Procedure 23," id. at 900-01, the "virtual representation" theory would permit preclusion based on "identity of interests and some kind of relationship between parties and nonparties," id. at 901. Such a broad theory would essentially authorize a "common-law kind of class action" without the procedural protections of Rule 23 -- a result incompatible with due process. Id. (quoting Tice v. Am. Airlines, Inc., 162 F.3d 966, 972 (7th Cir. 1998)).

**III.**

Taylor dictates the outcome of this case. The Parents were not a party to the bankruptcy proceeding at issue.[4] Yet, the

---

[4] Nor was Fundación a party to HDI's bankruptcy proceeding. Vargas-Colón, 864 F.3d at 17 n.6. But that fact is not as relevant as the Parents' lack of participation in the bankruptcy proceeding because Fundación is not the party being precluded. See Blonder-Tongue Lab'ys, Inc. v. Univ. of Ill. Found., 402 U.S. 313, 329 (1971) (abrogating mutuality requirement for the defensive use of

- 10 -

district court conducted a fact-intensive inquiry to determine whether the medical malpractice creditors were "virtual representative[s]" of the Parents. Santiago-Martínez, 540 F. Supp. 3d at 181 (quoting Bonilla Romero, 836 F.2d at 43). In doing so, the court assessed whether the Parents and the creditors were "substantially identical," whether the Parents and the creditors' interests were "closely related," and whether the Parents' interests were "fully represented in the earlier case." Id. But that sort of multi-factor balancing test was unanimously rejected in Taylor. See 553 U.S. at 889-90 (repudiating the D.C. Circuit's multi-factor test for virtual representation). Taylor thus makes clear that the virtual representation exception, as applied by the district court, is no longer an appropriate ground for nonparty preclusion.[5]

That said, Taylor recognized that some lower courts may use the term "virtual representation" while still reaching results

---

issue preclusion); see also Parklane Hosiery Co. v. Shore, 439 U.S. 322, 329 (1979) ("In both the offensive and defensive use situations, the party against whom estoppel is asserted has litigated and lost in an earlier action.").

[5] Contrary to Fundación's contention, our decision in Vargas-Colón does not counsel a different result. Unlike here, the plaintiff in that case was a party to the bankruptcy proceeding in which the pertinent finding was made. See Vargas-Colón, 864 F.3d at 28 ("In this case, [the plaintiff] does not argue that she did not have a full and fair opportunity to litigate the issue of the hospital's ownership in the bankruptcy case in which she was a medical-malpractice creditor and does not dispute that she lost the battle on that issue.").

- 11 -

"defensible on established grounds."  Id. at 904.  In its supplemental brief,[6] Fundación argues that preclusion was permissible under Taylor's third exception (the "representative suit" exception) and sixth exception (the "special statutory scheme" exception).[7]

Fundación makes no effort, however, to explain how Taylor's "representative suit" exception applies in the context of

---

[6] After oral argument, we asked for supplemental briefing on the following issue:

> The district court concluded that appellants Santiago-Martínez and Ramírez-Caraballo were in privity for issue preclusion purposes with the medical malpractice creditors who, in an earlier proceeding, moved the Bankruptcy Court to dismiss Hospital de Damas Inc.'s bankruptcy petition.  The district court reached this conclusion by finding that the medical malpractice creditors had "virtually represented" appellants.  See Santiago-Martínez v. Fundación Damas, Inc., 540 F. Supp. 3d 175, 181 (D.P.R. 2021).  The parties should address the consistency of the district court's reasoning and conclusion on the privity issue with the Supreme Court's disapproval in Taylor v. Sturgell, 553 U.S. 880 (2008), of nonparty preclusion by the expansive application of theories of virtual representation.

[7] Taylor's first, second, fourth, and fifth exceptions are plainly irrelevant here: The Parents did not agree to be bound by the earlier bankruptcy litigation, the Parents have no legal relationship with the medical malpractice creditors, the Parents did not exercise control over the creditors' prior litigation in the bankruptcy court, and there is no indication that the Parents are representatives or agents of the medical malpractice creditors.

- 12 -

this case.  Its "analysis" consists of a single sentence in its supplemental brief: "The district court's decision also fits into the third exception."  Appellee Suppl. Br. at 7.  Fundación thus waived our consideration of that exception.  See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").

In any event, the representative suit exception as depicted by the Supreme Court requires more than simply the equivalent interests identified by the district court in this case. Under that exception, the party in the earlier litigation must also have "understood [it]self to be acting in a representative capacity," or the original court must have "t[aken] care to protect the interests of the nonparty."  Taylor, 553 U.S. at 900.  And in some circumstances, the representative suit exception requires "notice of the original suit to the persons alleged to have been represented."  Id. (citing Richards, 517 U.S. at 801).  As noted, Fundación fails to argue -- let alone demonstrate -- how any such requirements were met here.

Fundación's reliance on Taylor's "statutory scheme" exception is also unavailing.  That exception allows preclusion when a special statutory scheme "expressly foreclos[es] successive litigation by nonlitigants."  Id. at 895 (emphasis added).  The bankruptcy system, of course, is a paradigmatic example of such a

scheme. Id. For instance, "proof of claims must be presented to the Bankruptcy Court for administration, or be lost when a plan of reorganization is confirmed." NLRB v. Bildisco & Bildisco, 465 U.S. 513, 529 (1984). Indeed, the provisions of a confirmed chapter 11 bankruptcy plan are generally binding upon the debtor and any creditor that holds a claim against, or interest in, the debtor. See 11 U.S.C. § 1141(a); see also 8 Collier on Bankruptcy ¶ 1141.02 (16th ed. 2023). "Consequently, parties may be precluded from raising claims or issues that they could have or should have raised before confirmation of a bankruptcy plan, but failed to do so." In re Varat Enters., Inc., 81 F.3d 1310, 1315 (4th Cir. 1996).

Fundación argues that, pursuant to this statutory scheme, the Parents should have filed a proof of claim in HDI's bankruptcy proceedings, "as other malpractice claimants did." Appellee Suppl. Br. at 3. Their failure to do so, according to Fundación, bars them from filing a separate lawsuit against HDI. But the defendant in this litigation is Fundación, not HDI, and Fundación was not the debtor in the prior bankruptcy proceeding. "Obviously, it is the debtor, who has invoked and submitted to the bankruptcy process, that is entitled to its protections; Congress did not intend to extend such benefits to third-party bystanders." In re W. Real Estate Fund, 922 F.2d 592, 600 (10th Cir. 1990); see also 11 U.S.C. § 524(e) ("[D]ischarge of a debt of the debtor does

- 14 -

not affect the liability of any other entity on, or the property of any other entity for, such debt.").[8]

Indeed, because Fundación was not even a party before the bankruptcy court, we fail to see how the Parents' claims against Fundación "could have been raised and litigated within the scope of the bankruptcy proceeding." Brown Media Corp. v. K&L Gates, LLP, 854 F.3d 150, 158 (2d Cir. 2017) (declining to apply res judicata to plaintiffs' claims that did not involve parties to the bankruptcy proceedings).[9] In sum, we see no basis for applying

_____

[8] Fundación cites a decision from the Supreme Court of Puerto Rico, La Comisión de los Puertos de Mayagüez v. González Freyre, 2023 TSPR 28 (P.R. March 15, 2023) (certified translation provided at Docket No. 54), for the simple proposition that bankruptcy proceedings are an example of a special statutory scheme with potential res judicata implications. That, of course, is true. But Fundación has not identified any part of the Bankruptcy Code that requires preclusion under the circumstances here.

[9] In fact, the Parents argue that the supplement to HDI's bankruptcy confirmation plan expressly protected the right of medical malpractice claimants, such as themselves, to sue Fundación:

It is the intention of the parties that nothing in this Consented Supplement, or in the Plan as confirmed shall be construed as an impediment to any medical malpractice claimant, with or without judgment, to file before any court with jurisdiction a complaint, motion or legal action against Fundación or any other third party in order to pursue any action or collect from Fundación or any other third party any malpractice claim or deficiency thereof (amount not collected from Debtor [HDI]) for which said entity might be liable.

See App. 68 (Consented Supplement to Joint Amended Plan of Reorganization). In Vargas-Colón, we interpreted the bankruptcy plan supplement as "permit[ting] the medical-malpractice creditors to sue Fundación." 864 F.3d at 27. Although we also held that

- 15 -

the "special statutory scheme" exception to preclude the Parents from litigating the critical ownership issue against Fundación.

## IV.

We reverse the district court's grant of summary judgment and remand for further proceedings consistent with this opinion.

So ordered.

---

the provision did not prevent Fundación from asserting the affirmative defense of issue preclusion, we offered no view on the merits of such a defense. See id.

We note that at least one court has declined to rely on the bankruptcy court's finding that HDI "owned" the hospital during the relevant period even when considering claims from a medical malpractice plaintiff that actually participated in the bankruptcy hearing. See Narváez v. Hosp. de Damas, KLAN201201997, 2014 WL 718435, at *13 (P.R. Cir. Jan. 27, 2014) (pages 45-46 of certified translation provided by the parties at ECF No. 68-4 in D.P.R. Case No. 3:16-cv-01327-DRD); but see Vargas-Colón 864 F.3d at 27 n.26 (discussing unpublished district court opinion permitting Fundación to assert the defense of issue preclusion against a different medical malpractice creditor). Narváez recognized that the bankruptcy court's finding merely rejected allegations that HDI committed fraud during the bankruptcy process by owning and operating Hospital de Damas without a license. See 2014 WL 718435, at *13 (page 46 of certified translation). According to Narváez, that factual finding did not "constitute a final determination as to whether Fundación Damas is or [is] not liable with regard to [a medical malpractice claimant] for the amount owed by Hospital Damas." Id. We need not delve into the persuasiveness of Narváez, however, because Fundación's inability to satisfy the rule against nonparty preclusion is sufficient to reverse the district court's decision here.