# United States Court of Appeals
## For the First Circuit

Nos. 16-1213
     16-1620

LIZBETH VARGAS-COLÓN, in representation of her minor daughter,
L.C.V.; JAIME MANUEL CEDEÑO-VARGAS; JAIME ALEXANDER CEDEÑO-
VARGAS,

Plaintiffs, Appellants,

v.

FUNDACIÓN DAMAS, INC.; BANCO POPULAR DE PUERTO RICO,
d/b/a Banco Popular de Puerto Rico,

Defendants, Appellees,

JOHN DOES 1, 2 AND 3; A, B, C CORPORATIONS; UNKNOWN INSURANCE
COMPANIES A THROUGH H,

Defendants.

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Gustavo A. Gelpí, Jr., U.S. District Judge]

Before

Howard, Chief Judge,
Lipez and Thompson, Circuit Judges.

David Efron, with whom Joanne V. Gonzales Varon and Law
Offices of David Efron, P.C. were on brief, for appellants.
     Freddie Pérez-González, with whom Freddie Peréz-González &
Assoc., P.S.C. was on brief, for appellee Fundación Damas, Inc.
     Luis E. Padrón Rosado for appellee Banco Popular de Puerto
Rico.

July 19, 2017

**THOMPSON**, **Circuit Judge**.  The case before us is, simply put, a hot mess.  The ongoing dispute has an evolving cast of characters and has featured stops in numerous federal and Puerto Rico courts.  And, in its present iteration, the briefing from all parties leaves much to be desired.  Yet, after slogging our way through these muddied waters, a modicum of clarity has emerged.  In the end, because plaintiffs — L.C.V., a minor represented by her mother, Lizbeth Vargas-Colón (Vargas),[1] and L.C.V.'s two brothers, Jaime Manuel Cedeño-Vargas and Jaime Alexander Cedeño-Vargas (collectively, the brothers) — have not presented us with a developed argument that convinces us to disturb the judgment of the district court, we affirm.

## BACKGROUND

Although we could spill gallons of ink explaining the ins and outs of the extensive procedural history of the several cases in this saga, we instead opt for a more efficient course: setting forth only those background facts necessary to put these appeals into their proper context.  At its core, this case is about a family's dogged efforts to recover for alleged acts of medical malpractice.

---

[1] The record is not entirely consistent on Vargas's last name. At some points, it is given as "Vargas Colón," but, at others, "Vargas-Colon" is used.  Our prior opinion in a related case involving Vargas used "Vargas-Colón," Vargas-Colón v. Hosp. Damas, Inc., 561 F. App'x 17, 18 (1st Cir. 2014), so we shall do the same.

## A.     First Medical-Malpractice Action

This case has its genesis in an undeniably tragic episode.  In 2000, Vargas went to Hospital Damas in Ponce, Puerto Rico for the birth of L.C.V.  Plaintiffs allege the following facts concerning L.C.V.'s birth.  The birth by Cesarean section was delayed until several hours after Vargas first arrived at Hospital Damas.  During some or all of this period of delay, L.C.V.'s brain was not receiving a sufficient amount of oxygen.  As a result, she suffered severe and permanent neurological defects, "has no hope of a normal life," and will require lifelong, round-the-clock care for her conditions.

In 2007, Vargas and her husband, Jaime M. Cedeño,[2] initiated a medical-malpractice action in the United States District Court for the District of Puerto Rico on their own behalf and on behalf of L.C.V. (Case No. 07-1032).[3]  The amended complaint asserted claims against Vargas's doctor and "Hospital Damas or, alternatively, John Doe Corporation d/b/a Hospital Damas."  It also alleged that "Hospital Damas is the owner and operator of a hospital of the same name, located in Ponce, Puerto Rico."  In August 2009, on the eve of trial and after the parties engaged in extensive discovery, the plaintiffs in Case No. 07-1032 settled

_____

[2] Cedeño is not a party to the case currently on appeal to this court.

[3] The brothers were not plaintiffs in Case No. 07-1032.

- 4 -

with Hospital Damas, Inc. (HDI) and the defendant doctor.[4]  The settlement agreement — which listed Vargas, Cedeño, and L.C.V. as settling plaintiffs and HDI and Vargas's doctor as settling defendants — called for the defendants to pay the plaintiffs a total of $1.5 million in eight installments.

The district court entered a judgment approving the settlement and dismissing the complaint with prejudice. Additionally, as the parties agreed, the district court retained jurisdiction over the case to enforce the terms of the settlement agreement.

## B.   HDI's Bankruptcy Case

The defendants paid the plaintiffs the initial payment of $400,000 under the settlement agreement.  But HDI failed to live up to its end of the bargain after that.  Instead, it filed a petition for bankruptcy in September 2010 (bankruptcy case).  In 2012, a group of medical-malpractice creditors of HDI — including L.C.V., Vargas, and Cedeño — moved to dismiss the bankruptcy petition, alleging (among other things) that the petition was filed fraudulently and in bad faith.  These allegations were premised on the fact that the license to operate Hospital Damas and the

---

[4] According to the plaintiffs in this case, the first time that the plaintiffs in Case No. 07-1032 learned of HDI was when the defendants in that case presented the settlement agreement to them.

certificate of need and convenience (CNC) — a document needed to operate a hospital in Puerto Rico — were actually held by Fundación Damas, Inc. (Fundación) and not by HDI, such that HDI was not lawfully operating Hospital Damas.

The bankruptcy court held a hearing on the motion, at which documentary and testimonial evidence was admitted and the medical-malpractice creditors and HDI argued their respective positions. The bankruptcy court denied the dismissal motion. The court found that Fundación "owns the real property on which the hospital facility known as Hospital Damas is located. Prior to 1987, it operated Hospital Damas. In 1987, Fundación . . . incorporated [HDI] and then leased the hospital facility to [HDI]." It also found that Fundación "transferred the hospital operation to [HDI]" in 1987 and that HDI "has been operating Hospital Damas since 1987." The court determined that HDI "inadvertently failed to realize that there was a problem with its CNCs and licenses prior to the filing of the motion to dismiss." The medical-malpractice claimants appealed the denial of their motion to the United States Bankruptcy Appellate Panel (BAP) for the First Circuit.

Meanwhile, the bankruptcy case continued on, and the court eventually confirmed a reorganization plan for HDI. In exchange for the medical-malpractice claimants' withdrawal of their objections to the plan and their appeal to the BAP, HDI and

- 6 -

the medical-malpractice claimants filed a Joint Amended Plan of Reorganization (bankruptcy plan supplement) in the bankruptcy court. In pertinent part, the bankruptcy plan supplement provided that:

> (C) . . . [N]othing in this Consented Supplement, or in the Plan as confirmed[,] shall be construed as an impediment to any medical malpractice claimant, with or without judgment, to file before any court with jurisdiction a complaint, motion or legal action against Fundación or any other third party in order to pursue any action or collect from Fundación or any other third party any malpractice claim or deficiency thereof (amount not collected from [HDI]) for which said entity might be liable. . . .
>
> . . .
>
> (E) The Medical Malpractice Claimants that have judgment shall also be entitled to . . . any reimbursement or replenishment due the Trust Fund[5] and to pursue any cause of action against Fundación, its Board of Directors, the Trust Fund or any other third party for the reimbursement or replenishment of the Trust Fund.
>
> . . .
>
> (H) The confirmation of the Plan does not preclude the Medical Malpractice Claimants from pursuing their claims against third parties, including, without limitation, Fundación as to if [sic] Fundación must replenish the Trust Fund.[6]

---

[5] In 1986, Fundación created the Hospital Damas Self-Insurance Trust Fund (Trust) for the payment of medical-malpractice claims against Hospital Damas pursuant to the Puerto Rico Insurance Code. See P.R. Laws Ann. tit. 26, § 4105.

[6] Fundación was not a party to HDI's bankruptcy case. Hot on the heels of the bankruptcy plan supplement's filing, Fundación filed in the bankruptcy court what it called a "Special Appearance . . . in Relation to [the Bankruptcy Plan Supplement]." In that document, Fundación asserted that it did not participate in the negotiations that led to the bankruptcy plan supplement and that

The bankruptcy court ultimately confirmed the reorganization plan, as supplemented by the bankruptcy plan supplement.

The plaintiffs in Case No. 07-1032 received $244,988.86 from HDI in payment of their pro rata distribution of their proof of claim in the bankruptcy case, bringing the total amount received to $644,988.86 — over $855,000 less than the $1.5 million to which they were entitled under the settlement agreement.

## C.    Unsuccessful Attempt to Amend Judgment in Case No. 07-1032

In an effort to collect the balance, the plaintiffs in Case No. 07-1032 returned to the district court and moved, pursuant to Rule 60 of the Federal Rules of Civil Procedure — which is entitled "Relief From a Judgment or Order" — to amend the judgment "to substitute, nunc pro tunc, [HDI] in the settlement agreement for another entity, Fundación."  The motion argued that, because Fundación was "the only legal entity holding a CNC and authorized by law to operate Hospital Damas in Ponce, Puerto Rico[] as of the time of the facts alleged in the complaint in November 2000," it was the true "owner and legal entity authorized by law to operate Hospital Damas" at the time of the alleged malpractice.  Because hospital owners and operators can be held vicariously liable for

it "reserve[d] any right or defense against all present or future claims against it by the Medical Malpractice Claimants."  Upon motion of a medical-malpractice claimant, the bankruptcy court struck Fundación's filing.

- 8 -

the negligence of hospital employees and staff under Puerto Rico law, the motion argued, Fundación was liable for the medical malpractice. The motion therefore requested that Fundación be added as a party defendant in Case No. 07-1032. Finally, the motion repeated the theme sounded in the bankruptcy case: that HDI and Fundación had fraudulently misled the plaintiffs into believing that the soon-to-be bankrupt HDI was the owner and operator of Hospital Damas and concealed Fundación's status as the real owner and operator.[7] HDI opposed the motion, arguing that the bankruptcy court's finding that HDI, and not Fundación, was the owner and operator of Hospital Damas barred the plaintiffs' motion under the doctrine of issue preclusion.

---

[7] This fraud argument was exceedingly bare bones and not pressed to its completion. For example, although the plaintiffs complained in their motion that Fundación's relationship to Hospital Damas "was [n]ever divulged in the disclosures, discovery or appearances by defendant 'Hospital Damas,'" the motion did not say that this nondisclosure constituted a discovery violation (i.e., that plaintiffs asked who owned Hospital Damas and HDI either didn't respond or provided an incorrect response). Similarly, despite the "fraud" label, the plaintiffs cited Rule 60(b)(6), which authorizes a court to relieve a party from a judgment for "any other reason that justifies relief," and not Rule 60(b)(3), which allows for relief from a judgment because of "fraud . . . , misrepresentation, or misconduct by an opposing party." Finally, the plaintiffs abandoned entirely their reliance on Rule 60(b) in their objection to the magistrate judge's report and recommendation (R&R), instead relying solely on Rule 60(a), see Vargas-Colón, 561 F. App'x at 20, which permits correction of "a clerical mistake or a mistake arising from oversight or omission," Fed. R. Civ. P. 60(a).

The district court denied the motion to amend the judgment. The plaintiffs in this case concede that, in recommending the denial of the motion to amend in Case No. 07-1032, the magistrate judge "appl[ied] the doctrine of issue preclusion based on the ruling of the [b]ankruptcy [c]ourt." As explained by the district-court judge who adopted the magistrate judge's R&R, "the [b]ankruptcy [c]ourt made the factual findings that, regardless of Fundación's ownership of the property comprising the hospital, [HDI] was <u>indeed</u> the hospital's operator since 1987, and, thus, liable for the negligence that caused [the plaintiffs'] injuries." Therefore, the court explained, it was "not persuaded by [the plaintiffs'] argument that [Fundación] was and is the only lawful owner and operator of the Hospital Damas and, as such, liable for the settlement agreement that led to a judgment from this court." The court clarified, however, that it was "not making a determination on the validity of any claims [the plaintiffs] <u>might</u> have against Fundación."

The plaintiffs appealed from the denial of their motion, and we affirmed on the ground that the plaintiffs were not entitled to relief under Rule 60(a).[8] See <u>Vargas-Colón</u>, 561 F. App'x at

---

[8] We granted Fundación provisional leave to intervene in that appeal, although we did not rely on the arguments provided in its brief, which included an issue-preclusion defense, and ultimately denied the motion to intervene. See <u>Vargas-Colón</u>, 561 F. App'x at 22 n.6.

18, 21-22.  In so doing, we expressed no opinion on "the question of whether issue preclusion might provide Fundación a defense" or on "the unpreserved suggestion that the settlement agreement might (according to its terms, if not to common sense) have created rights enforceable against Fundación and a number of other non-signatories."  Id. at 21-22.  We explained that "[t]hese issues are, at best, for another day in another case," id. at 22, and that "[w]hether the plaintiffs actually have any viable claim against Fundación is an issue we need not and do not reach in order to affirm the judgment in this case," id. at 22 n.5.[9]

### D.    Puerto Rico Action Against Trustee

Meanwhile, in 2012, the plaintiffs in Case No. 07-1032 filed an action for injunctive relief against Banco Popular de Puerto Rico (Banco Popular), as trustee of the Trust, in the Puerto Rico Court of First Instance.  The plaintiffs alleged that Banco Popular committed acts as trustee that wrongfully impaired their ability to collect the settlement proceeds from the Trust.  For reasons that need not concern us, the plaintiffs in that action successfully moved for voluntary dismissal of their complaint without prejudice in 2013.

---

[9] Plaintiffs in this case argue on appeal that our opinion in Vargas-Colón "intimated that this suit against third parties is allowed," but, as the above-quoted passages demonstrate, it did no such thing.

**E.   This Case**

At long last, we turn to the instant case.  Vargas, on behalf of L.C.V., and L.C.V.'s two brothers filed this diversity action against Fundación and Banco Popular in December 2014.  The amended complaint alleges that Fundación "is[,] pursuant to filings in the Department of Health, the owner and operator of Hospital Damas located in Ponce, Puerto Rico."  Plaintiffs assert three causes of action, two of which are relevant on appeal.[10]  First, count 1 of the amended complaint asserts a medical-malpractice claim against Fundación under Articles 1802 and 1803 of the Puerto Rico Civil Code.[11]  Second, plaintiffs also assert a negligence claim against Fundación and Banco Popular for mismanagement of the funds of the Trust (count 3).[12]  Count 3

---

[10] One of the counts of the amended complaint, count 2, asserts a direct action against defendants Unknown Insurance Companies A through H.  Count 2 is not implicated in plaintiffs' appeal, so we say no more about it.

[11] Article 1802, "Puerto Rico's General Tort Statute," Díaz-Nieves v. United States, 858 F.3d 678, 689 (1st Cir. 2017), provides, in pertinent part, that "[a] person who by an act or omission causes damage to another through fault or negligence shall be obliged to repair the damage so done."  P.R. Laws Ann. tit. 31, § 5141.  Article 1803, meanwhile, provides as a general matter that "[t]he obligation imposed by § 5141 of this title is demandable, not only for personal acts and omissions, but also for those of the persons for whom they should be responsible" and, as is relevant here, that "[o]wners or directors of an establishment or enterprise are likewise liable for any damages caused by their employees in the service of the branches in which the latter are employed or on account of their duties."  Id. § 5142.

[12] Although the heading accompanying count 3 in the amended complaint characterizes the claim as a "[n]egligence [a]ction

alleges that defendants owed plaintiffs, as medical-malpractice claimants, a duty "to not mismanage the [Trust] funds" and that they breached this duty by "squander[ing] . . . the funds."

Banco Popular moved to dismiss count 3, and Fundación moved for summary judgment on counts 1 and 3.  The district court granted both defendants' motions.  Plaintiffs timely appealed.[13]

## ANALYSIS

On appeal, plaintiffs purport to challenge the district court's grant of Banco Popular's motion to dismiss count 3 and its grant of summary judgment in favor of Fundación.  Because our analysis of the brothers' claims differs from our treatment of L.C.V.'s claims, we discuss them separately.

### A.    The Brothers

The amended complaint's treatment of the brothers' claims is murky at best.  As outlined above, the complaint asserts, on behalf of all three of the plaintiffs in this case, a medical-malpractice claim against Fundación in count 1 and, in count 3, a

---

[a]gainst Banco Popular," that count's allegations assert a negligence claim against both Banco Popular and Fundación.

[13] Plaintiffs also filed a motion for reconsideration, which the district court denied on the basis that the motion simply "reiterat[ed] arguments that were rejected by the [c]ourt." Plaintiffs timely appealed from that order as well, and the two appeals were consolidated for purposes of briefing and oral argument.  Because plaintiffs do not offer any argument relating to the denial of their motion for reconsideration in their briefs, we need not discuss this aspect of the case any further.

- 13 -

negligence claim against Fundación and Banco Popular based on both defendants' breach of the duty they owed to plaintiffs, as medical-malpractice claimants, to properly manage the funds of the Trust. But when it comes to specifics on the brothers' claims, the amended complaint is frustratingly silent. It identifies the brothers as plaintiffs and requests monetary recovery for their unspecified "non-economic damages." But that's it. It contains no allegations in support of their claims, and it does not explain in any way how the alleged negligence of defendants harmed the brothers.

In its motion to dismiss, Banco Popular offered several different grounds for dismissal, including the amended complaint's failure to include any allegations in support of the brothers' claims. In their opposition, plaintiffs inexplicably offered no response to Banco Popular's pleading-deficiency argument. The district court granted Banco Popular's motion to dismiss with prejudice, as well as Fundación's motion for summary judgment, but for other reasons argued by those defendants.[14]

On appeal, plaintiffs have at last offered a few scattered, oblique hints — albeit far from a full explanation — of

_____

[14] Those other grounds — which we'll discuss in more detail below — were that count 1 is barred by the doctrine of issue preclusion and that count 3 failed as a matter of law because plaintiffs were not intended beneficiaries of the Trust and, in any event, the Puerto Rico Insurance Commissioner had primary jurisdiction over the claim asserted in count 3.

- 14 -

the nature of the brothers' claims.  In their opening brief, for instance, plaintiffs assert in an argument subheading that the brothers "suffered damages and those damages are continuous, as they live with their sister."  In a single sentence in the statement-of-facts section of their brief, plaintiffs state, with no citation to the record, that L.C.V.'s "two older brothers, Plaintiff-Appellants Jaime Manuel Cedeño Vargas and Jaime Alexander Cedeño Vargas[,] have had to sacrifice their quality of life and that of their parents because of Minor Plaintiff, L.C.V.'s greater needs and would have to put their sister's urgent needs first before their own."  Along similar lines, at oral argument, when asked to identify the amended complaint's allegations on behalf of the brothers, plaintiffs' counsel avoided a direct response, instead vaguely alluding to the brothers' "pain and suffering."

Piecing together these hints along with the amended complaint's allusion to the brothers' "non-economic damages" and its citation to Articles 1802 and 1803 as support for the medical-malpractice claim asserted in count 1, we suspect that the brothers are asserting a derivative claim under Article 1802.  Under Puerto Rico law, "individuals who are harmed because a close relative or loved one is tortiously injured may invoke Article 1802 as a vehicle for prosecuting a cause of action against the tortfeasor."  Díaz-Nieves, 858 F.3d at 689.  This "wholly derivative" claim,

id., requires the plaintiff to prove three elements: "(1) that he has suffered emotional harm, (2) that this harm was caused by the tortious conduct of the defendant toward the plaintiff's relative or loved one, and (3) that the defendant's conduct was tortious or wrongful," id. (quoting Méndez-Matos v. Municipality of Guaynabo, 557 F.3d 36, 57 (1st Cir. 2009)).

Banco Popular reiterates on appeal many of the arguments it made below, including the contention that the amended complaint wholly lacks any allegations in support of the brothers' claims. And, as was true below, plaintiffs fail to address this argument in their reply brief.

In our de novo review of the district court's entry of summary judgment, as well as the dismissal of a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure, we are free to affirm on any ground apparent from the record. See Delgado Echevarría v. AstraZeneca Pharm. LP, 856 F.3d 119, 126 (1st Cir. 2017); Hochendoner v. Genzyme Corp., 823 F.3d 724, 730 (1st Cir. 2016). We exercise that authority with respect to the brothers' claims.

The brothers' claims for recovery for their "non-economic damages" immediately falter because, contrary to counsel's representation to us at oral argument, the amended complaint contains absolutely no factual allegations with respect to the first element of the brothers' derivative claim: that they

suffered emotional harm.  See Díaz-Nieves, 858 F.3d at 689.  The amended complaint is therefore woefully deficient and clearly fails to state a plausible derivative medical-malpractice claim on behalf of the brothers.[15]  See Portugués-Santana v. Rekomdiv Int'l, Inc., 725 F.3d 17, 26-27 (1st Cir. 2013) (affirming dismissal under Rule 12(b)(6) where complaint's allegations failed to establish element necessary to make out plausible claim).

The same can be said for count 3:  Because the alleged duty that defendants owed to plaintiffs with respect to count 3 was premised on plaintiffs' status as medical-malpractice claimants, the brothers' failure to plead a plausible derivative medical-malpractice claim dooms their claim for negligent management of the Trust funds.  Accordingly, we affirm the district court's entry of judgment for defendants on the brothers' claims in counts 1 and 3.

---

[15] Although the district court entered summary judgment in Fundación's favor, instead of dismissing the claims against Fundación for failure to state a claim under Rule 12(b)(6), that poses no barrier to our affirmance of the judgment on alternative grounds.  After all, "[a] plaintiff is not entitled to present affidavits and reach the summary judgment stage if her complaint, on its face, reveals an inadequate basis for her claim." Jacob v. Curt, 898 F.2d 838, 839 (1st Cir. 1990) (per curiam); cf. 10A Charles Alan Wright et al., Federal Practice & Procedure § 2713 (4th ed. 2016) ("Of course, a summary-judgment motion may be made on the basis of the pleadings alone, and if this is done it functionally is the same as a motion to dismiss for failure to state a claim or for a judgment on the pleadings." (footnote omitted)).

## B.    L.C.V.

We now turn to the claims of the sole remaining plaintiff, L.C.V.  We first address the district court's treatment of count 3 — the claim for mismanagement of the Trust funds — before proceeding to analyze the entry of summary judgment in Fundación's favor on the medical-malpractice claim asserted in count 1.

### 1.    Count 3

Banco Popular moved to dismiss count 3 on several grounds.  The district court granted the motion for two independent reasons advanced by Banco Popular.  First, the court concluded that Banco Popular owed L.C.V.[16] no duty as trustee because she was not an intended beneficiary of the Trust.  Second, the court concluded that, even if L.C.V. was a beneficiary of the Trust, dismissal of count 3 would still be warranted because the Puerto Rico Insurance Commissioner had primary jurisdiction over the claim asserted in that count.[17]

---

[16] From here on out, we'll limit our focus to L.C.V.

[17] Although the district court's decision characterized count 3 as asserting a negligence claim against Banco Popular, it is clear that the court understood count 3 as asserting claims against both Banco Popular and Fundación; it explained in its decision that "Count III of Plaintiffs' complaint is a specific cause of action against [Banco Popular], alleging that both [Banco Popular] and Fundación are liable for [Banco Popular's] mismanagement of the funds within the . . . Trust . . . as Trustee of the same."  It's apparent from this passage that the court

Typically, we would review the district court's Rule 12(b)(6) dismissal de novo, viewing all the factual allegations in the complaint as true, drawing all reasonable inferences in L.C.V.'s favor, and assessing whether the complaint contains sufficient factual material to state a facially plausible claim. See O'Shea ex rel. O'Shea v. UPS Ret. Plan, 837 F.3d 67, 77 (1st Cir. 2016). But this case comes with a unique (and confounding) twist: Even though L.C.V. asserts on appeal that she is appealing the district court's entry of judgment on count 3, her brief is completely devoid of any arguments that address either ground relied upon by the district court. L.C.V.'s opening brief asserts that "[t]he beneficiaries of the [Trust] are Plaintiff-Appellants, whom [sic] are medical malpractice claimants" in a heading in multiple places in the brief, but it offers absolutely no argument on the beneficiary issue or why the district court, in her view, got it wrong. Nor does the opening brief offer any analysis of the district court's alternative, primary-jurisdiction ground for dismissing count 3. Instead, under the heading concerning plaintiffs' status as trust beneficiaries, L.C.V. proffers a completely different and unrelated argument: that, because the district court in Case No. 07-1032 retained jurisdiction to enforce

---

intended its analysis of count 3 to apply to the claim asserted in that count against both Banco Popular and Fundación.

- 19 -

the settlement agreement, L.C.V. is entitled to enforce it against Fundación, an entity that is, according to her, covered by the settlement agreement's language.  That's the sum and substance. When pressed at oral argument to identify where in the opening brief any developed argument concerning the dismissal of count 3 could be found, plaintiffs' counsel identified the passage we just described.  But neither that section of the brief nor any other contains any such argument.

L.C.V.'s failure to make any argument challenging either ground invoked by the district court in dismissing count 3 with prejudice has serious consequences:

> [I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones.

United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) (internal citations omitted).  Therefore, we will not consider any argument that L.C.V. could have made (but failed to make) in the opening brief with respect to the district court's entry of judgment for defendants on the claim asserted in count 3 for alleged mismanagement of Trust funds.  See Tutor Perini Corp. v. Banc of Am. Sec. LLC, 842 F.3d 71, 96 (1st Cir. 2016) (concluding that appellant "waived any argument it might have on" a claim because, although "a heading in [appellant's] opening brief suggests the

judge erred in dismissing the . . . claim, its appellate papers never explain how this is so"); Sparkle Hill, Inc. v. Interstate Mat Corp., 788 F.3d 25, 29 (1st Cir. 2015) ("Our precedent is clear: we do not consider arguments for reversing a decision of a district court when the argument is not raised in a party's opening brief."); Acevedo-Delgado v. Rivera, 292 F.3d 37, 42 n.6 (1st Cir. 2002) (concluding that argument was not properly before court where heading in brief raised issue but "[t]he discussion that follow[ed] [did] not address that point").[18]

We emphasize that L.C.V.'s briefing failure renders it unnecessary for us to address either ground relied upon by the district court in dismissing count 3 with prejudice. Therefore,

---

[18] L.C.V.'s belated attempt to address these grounds in the reply brief does not effectively excuse her inexplicable failure to do so in the opening brief because "it is well-settled that a legal argument made for the first time in an appellant's reply brief comes too late and need not be addressed." United States v. Arroyo-Blas, 783 F.3d 361, 366 n.5 (1st Cir. 2015) (quoting United States v. Brennan, 994 F.2d 918, 922 n.7 (1st Cir. 1993)). Moreover, we note that the documents identified by L.C.V. in the reply brief in support of her assertion that she is a trust beneficiary do not provide any support for the subheading in the opening brief that states: "Fundaci[ó]n Damas, Inc. admits that the Trust Fund's intended beneficiaries are medical malpractice claimants." (Emphasis added.) These documents do suggest that HDI admitted in pleadings in the bankruptcy case that the intended beneficiaries of the Trust were medical-malpractice creditors, but the documents say nothing about any admission by Fundación, and L.C.V. has offered no legal arguments as to why this court should treat the two corporations as one entity under, for example, "the 'alter ego' (piercing the corporate veil) analysis." Santiago-Hodge v. Parke Davis & Co., 859 F.2d 1026, 1029 (1st Cir. 1988).

because we need not do so, we express no opinion on the merits of the district court's decision.

## 2. Count 1

Count 1 of the amended complaint seeks to hold Fundación vicariously liable for the medical malpractice under Articles 1802 and 1803. It is clear from the amended complaint and L.C.V.'s brief on appeal that the medical-malpractice claim against Fundación is premised on its liability as the owner and operator of Hospital Damas at the time of the acts of malpractice.

Fundación moved for summary judgment on several grounds; first and foremost, Fundación argued that L.C.V. was "barred under issue preclusion from filing this lawsuit due to the decision of the bankruptcy court holding that HDI is Hospital Damas['s] operator." The district court agreed.[19] It concluded that the issue of the "alleged illegality of HDI's operation[]" of Hospital Damas "was raised and adjudicated by the [b]ankruptcy [c]ourt" and that "[j]udgment [in the bankruptcy case] was formally entered as to this issue when HDI's plan of reorganization was confirmed,

---

[19] The primary basis on which the court granted summary judgment in Fundación's favor was claim preclusion. The court then noted that it "need not enter [the] waters" of issue preclusion in light of its claim-preclusion analysis. Nevertheless, "[i]n [an] abundance of caution," the district court went on to explain why issue preclusion also barred L.C.V.'s claims against Fundación. On appeal, L.C.V. concedes that the entry of summary judgment in Fundación's favor was based, at least in part, on issue-preclusion grounds.

after the [b]ankruptcy [c]ourt ruled on the medical malpractice claimants' argument." The court also explained that it was "certain that the issue argued and adjudicated by the bankruptcy court is identical to the one [p]laintiffs raise today." Therefore, the court concluded that "Plaintiffs are precluded from re-litigating the issue of HDI's operations, under the theory of issue preclusion-<u>res judicata</u>." We review the district court's entry of summary judgment and its application of the doctrine of issue preclusion de novo. See <u>Delgado Echevarría</u>, 856 F.3d at 126; <u>Robb Evans & Assocs., LLC</u> v. <u>United States</u>, 850 F.3d 24, 31 (1st Cir. 2017).

Issue preclusion, sometimes referred to as collateral estoppel, "bars parties from re-litigating issues of either fact or law that were adjudicated in an earlier proceeding." <u>Robb Evans</u>, 850 F.3d at 31; see also <u>Taylor</u> v. <u>Sturgell</u>, 553 U.S. 880, 892 (2008). Although it is not entirely clear from L.C.V.'s briefing whether she believes Puerto Rico law or federal common law controls in this case,[20] the particular finding of fact that Fundación argues (and the district court concluded) is entitled to preclusive effect was made by the federal bankruptcy court.

---

[20] For instance, at one point in the opening brief, L.C.V. appears to concede that federal common law governs, but, later on in the same brief, she seems to assert that Puerto Rico law should control the issue-preclusion question in this case.

Therefore, federal common law controls the question of issue preclusion in this case. See Taylor, 553 U.S. at 891 ("The preclusive effect of a federal-court judgment is determined by federal common law."); see also Daniels v. Agin, 736 F.3d 70, 87 (1st Cir. 2013); Kane v. Town of Harpswell (In re Kane), 254 F.3d 325, 328 (1st Cir. 2001); Iannochino v. Rodolakis (In re Iannochino), 242 F.3d 36, 41 (1st Cir. 2001); Monarch Life Ins. Co. v. Ropes & Gray, 65 F.3d 973, 978 (1st Cir. 1995).

The party asserting issue preclusion under federal common law must make a four-part showing: "that '(1) both proceedings involve[] the same issue of law or fact, (2) the parties actually litigated that issue [in the prior proceeding], (3) the prior court decided that issue in a final judgment, and (4) resolution of that issue was essential to judgment on the merits.'" Robb Evans, 850 F.3d at 32 (alterations in original) (quoting Global NAPs, Inc. v. Verizon New Eng. Inc., 603 F.3d 71, 95 (1st Cir. 2010)).

L.C.V. makes no argument that the district court's determinations on prongs one and two — that both this case and the bankruptcy case involve the same issue of fact (namely, the identity of the owner and operator of Hospital Damas) and that the issue was actually litigated before and adjudicated by the

- 24 -

bankruptcy court — were erroneous.[21]  Along similar lines, L.C.V. does not make any argument with respect to prongs three and four: that the bankruptcy court decided the issue in a final judgment and that the resolution of the issue was essential to the bankruptcy court's judgment on the merits.  In light of L.C.V.'s failure to offer a discrete argument that any of these issue-preclusion prerequisites have not been met, we need not dwell on them.  See Robb Evans, 850 F.3d at 32 (sidestepping consideration of three prerequisites that were not challenged by party resisting issue preclusion and limiting analysis to only prerequisite in dispute); Daniels, 736 F.3d at 88 (holding that party resisting issue preclusion waived, for lack of developed argumentation, any argument that issue was not the same in earlier and later cases).[22]  Instead, we proceed to tackle L.C.V.'s arguments (as best as we can understand them) that the district court erred as a matter of

---

[21] L.C.V. has not argued, for example, that the bankruptcy court's finding that HDI is the owner and operator of Hospital Damas leaves room for a conclusion that Hospital Damas had more than one owner or operator and that Fundación was one of them. L.C.V. has also not contended that the medical-malpractice creditors — a group that included L.C.V. — were not given a full and fair opportunity to litigate the ownership issue.  Therefore, we need not consider these issues.

[22] We emphasize that we are not expressing any opinion on whether these issue-preclusion prerequisites have been met; L.C.V.'s failure to offer any argument that any of these prerequisites have not been met compels our silence on this point.

law in applying issue preclusion in this case.[23]  We address each contention one by one.

> **a.**  L.C.V. first contends that, because the bankruptcy plan supplement expressly permits the medical-malpractice creditors to sue Fundación, Fundación cannot assert issue preclusion as a defense.  The bankruptcy plan supplement, L.C.V. tells us, "specifically includes Fundación . . . and excludes any issue preclusion."  (Emphasis omitted.)  And, to cinch matters, L.C.V. points to a Puerto Rico Court of Appeals decision that, according to her, supports her position.  We are unpersuaded.

> In our view, the language of the bankruptcy plan supplement does not "exclude[] any issue preclusion."  To the contrary, it does not mention the notion of issue preclusion (or the bankruptcy court's factual findings in connection with the motion to dismiss) at all.  Instead, its language is more limited.  For instance, it provides that "nothing in <u>this Consented Supplement, or in the Plan</u> as confirmed[,] shall be construed as an impediment" to suit against Fundación and that "[t]he confirmation of <u>the Plan</u> does not preclude" the medical-malpractice creditors from suing Fundación.  (Emphases added.)

---

[23] Because we have already determined that judgment in favor of defendants on the brothers' claims was properly entered, we need not address any issue-preclusion arguments that relate solely to the brothers' claims.

- 26 -

Although we agree with L.C.V. that the bankruptcy plan supplement permitted the medical-malpractice creditors to sue Fundación, we must, given the language of that document, reject her assertion that it also shielded her from Fundación's ability to assert the affirmative defense of issue preclusion. Cf. R.I. Hosp. Tr. Nat'l Bank v. Bogosian (In re Belmont Realty Corp.), 11 F.3d 1092, 1098 (1st Cir. 1993) (rejecting argument "that the Bank must be deemed by implication to have 'waived' any res judicata effects of [a bankruptcy decision] when it agreed, in the Consent Order, to have the merits of the counterclaims decided in the [d]istrict [c]ourt [a]ction" because "[n]othing was said about waiving the res judicata effects of the [bankruptcy decision]" in the Consent Order; "[i]n effect, Bogosian is asking this Court to supply in the Consent Order a missing contract term to which the parties never expressly agreed, namely, an agreement by the Bank to forego its res judicata defense. We see no reason to do so.").

But wait, L.C.V. says: Another court has already ruled against Fundación on its issue-preclusion defense. L.C.V. points to a decision from the Puerto Rico Court of Appeals, Narváez v. Hospital de Damas, KLAN201201997, 2014 WL 718435 (P.R. Cir. Jan. 27, 2014) (certified translation provided by the parties), that was decided before this case was filed and that denied Fundación's attempt to assert the affirmative defense of issue preclusion against another medical-malpractice creditor. L.C.V. asserts that

Narváez "specifically mentions [the bankruptcy court's denial of the medical-malpractice creditors' motion to dismiss the bankruptcy petition] as being set aside for purposes of the bankruptcy court's confirmation of a plan of reorganization."[24] Deciphering precisely what L.C.V. is saying in this quoted passage is a bit challenging. We think she is saying that Narváez stands for the proposition that the critical bankruptcy-court finding relative to HDI's ownership and operation of Hospital Damas was set aside when the plan (as supplemented by the bankruptcy plan supplement) was confirmed and that, for this reason, issue preclusion is not available to Fundación.[25] But Narváez says nothing about the bankruptcy-court finding being set aside, and its conclusion that Fundación could not assert issue preclusion was in actuality based on two grounds that L.C.V. has not argued on appeal.[26] We therefore reject L.C.V.'s assertion that the

---

[24] Plaintiffs' opposition to Fundación's motion for summary judgment contained the same passage. The district court did not address this argument or the Narváez case in its decision granting the summary-judgment motion.

[25] Fundación seems to interpret this passage of L.C.V.'s brief the same way we do, and, to the extent L.C.V. meant otherwise, she failed to clear up Fundación's misunderstanding in her reply brief.

[26] Although Narváez noted that "the language of the [bankruptcy plan supplement] is crystal clear and establishes that [the bankruptcy plan supplement] did not constitute a waiver of liability for Fundación Damas since the causes of action of the creditors of the malpractice claims were reserved," Narváez 2014 WL 718435 (certified translation at 47), that observation is not, at least as we read the opinion, the reason why the court rejected

- 28 -

bankruptcy plan supplement prevents Fundación from asserting the defense of issue preclusion.

**b.** L.C.V. next argues that "there is no identity of parties because it is Fundación Damas whom [sic] wants to use the

---

Fundación's issue-preclusion defense. Instead, the court offered the following reasoning for that decision:

> It should be pointed out that the bankruptcy procedure is one that is sui generis where there are no plaintiffs and defendants. The same is focused on the protection of the assets of the debtor ("the estate"), in this case [HDI]. The fact that the appellant, Mrs. Maldonado, and the other creditors of claims for malpractice filed a motion to dismiss does not automatically convert the bankruptcy procedure into an adversarial one. This is reflected in the focus of the hearing held by the Bankruptcy Court which was geared to deciding if [HDI] had committed fraud in the bankruptcy. The "Opinion and Order" issued by the Bankruptcy Court constitutes an expression of this forum with regard to the fact that there was no fraud in the bankruptcy. In no way does this constitute a final determination as to whether Fundación Damas is or [is] not liable with regard to the appellant for the amount owed by Hospital Damas. Especially when Fundación Damas was not a party in the process and said matter was not subject to discussion in the evidentiary hearing held before the Bankruptcy Court. That is why, we consider that the appellant has not had the opportunity to litigate this matter.

Id. (certified translation at 45-46).

In a different case, Maldonado v. Damas Found., Inc., Civ. No. 12-1042 (JAG), a district-court judge permitted Fundación to assert the defense of issue preclusion against a different medical-malpractice creditor. In doing so, the district court in Maldonado rejected the reasoning of Narváez. We need not enter this fray, however, because, as explained above, see supra note 21, L.C.V. has not argued that the issue decided in the bankruptcy case is not the same as the critical issue in this case or that the medical-malpractice creditors were not given a full and fair opportunity to litigate the ownership issue in the bankruptcy case.

- 29 -

preclusive effect of the [b]ankruptcy court order issued to [HDI]." We interpret this passage as an argument that Fundación cannot assert issue preclusion because it was not a party to the bankruptcy case, and we reject this erroneous position.

Under the concept of nonmutual issue preclusion, a defendant like Fundación who was not a party to the earlier proceeding may still assert issue preclusion "to prevent a plaintiff from asserting a claim the plaintiff has previously litigated and lost against another defendant," Rodríguez-García v. Miranda-Marín, 610 F.3d 756, 771 (1st Cir. 2010) (quoting Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326 n.4 (1979)), provided that the party against whom issue preclusion is asserted "has had a full and fair opportunity for judicial resolution of the same issue," id. (quoting Fiumara v. Fireman's Fund Ins. Cos., 746 F.2d 87, 92 (1st Cir. 1984)). In this case, L.C.V. does not argue that she did not have a full and fair opportunity to litigate the issue of the hospital's ownership in the bankruptcy case in which she was a medical-malpractice creditor and does not dispute that she lost the battle on that issue. Thus, her argument "is foreclosed by the precedent permitting defensive nonmutual collateral estoppel." Id.

c. L.C.V. next argues that issue preclusion should not apply because defendants fraudulently misled her as to the identity of the true owner and operator of Hospital Damas. She points to

- 30 -

four documents to support this contention.[27]  But she has not offered us any explanation whatsoever of how these documents demonstrate that defendants engaged in any misrepresentation, and, after viewing the documents for ourselves, we cannot see any support in them for her claim that she has been fraudulently misled.  Other than her unexplained citation to these documents, L.C.V. makes no attempt to develop this fraudulent-misrepresentation argument or to explain how this argument impacts the district court's issue-preclusion conclusion.  In these circumstances, we need not consider her woefully undeveloped argument.  See Zannino, 895 F.2d at 17.

**d.**  Perhaps somewhat relatedly, L.C.V. appears to argue that issue preclusion is inapplicable in this case because the bankruptcy court's finding that HDI was the owner and operator of Hospital Damas was incorrect.  But this argument is a total nonstarter because "issue preclusion prevent[s] relitigation of wrong decisions just as much as right ones." B & B Hardware, Inc. v. Hargis Indus., Inc., 135 S. Ct. 1293, 1308 (2015) (alteration

---

[27] These documents consist of the following:  minutes of a 2009 meeting of Fundación's board of directors in which Case No. 07-1032 was listed as a topic of discussion; letters dated 2007 and 2008 from Fundación's attorneys to the Puerto Rico Health Department concerning Hospital Damas; minutes of a 2006 joint meeting of Fundación's board of directors and HDI's board of directors; and a 2006 contract between Fundación and the Puerto Rico State Insurance Fund Corporation concerning the provision of hospital services.

in original) (quoting B & B Hardware, Inc. v. Hargis Indus., Inc., 716 F.3d 1020, 1029 (8th Cir. 2013) (Colloton, J., dissenting)); see also Bath Iron Works Corp. v. Dir., Office of Workers' Comp. Programs, 125 F.3d 18, 22 (1st Cir. 1997) ("[T]he point of collateral estoppel is that the first determination is binding not because it is right but because it is first . . . .").

e. Undeterred, L.C.V. cites Montana v. United States, 440 U.S. 147, 159 (1979), for the proposition that "changes in facts essential to a judgment will render collateral estoppel inapplicable in a subsequent action raising the same issues." And she believes that this case involves just such a change in facts: "The confirmation of Fundación Damas being the owner and acting as the operator of Hospital Damas is a material fact in Plaintiffs-Appellants' case and in the judgment."

Montana offers L.C.V. no support. She has not identified a change in facts since the bankruptcy court's finding — which is what we care about in this case for issue-preclusion purposes. Cf. Montana, 440 U.S. at 162 ("Because the factual and legal context in which the issues of this case arise has not materially altered since Kiewit I [the decision to be given preclusive effect], normal rules of preclusion should operate to relieve the parties of 'redundant litigation [over] the identical question of the statute's application to the taxpayer's status.'" (second alteration in original) (emphasis added) (quoting Tait v. W. Md.

- 32 -

Ry. Co., 289 U.S. 620, 624 (1933))). Instead, she seems to be saying that her perception of the true owner and operator of Hospital Damas changed between the settlement in Case No. 07-1032 and the bankruptcy-court finding, which finding, she says, was erroneous. As we just explained, however, issue preclusion prevents L.C.V. from relitigating the bankruptcy court's rejection of her position that Fundación was the owner and operator of Hospital Damas. See id. ("[A] fact, question or right distinctly adjudged in the original action cannot be disputed in a subsequent action, even though the determination was reached upon an erroneous view or by an erroneous application of the law." (emphasis omitted) (quoting United States v. Moser, 266 U.S. 236, 242 (1924))).

**f.** L.C.V. also argues that, as a matter of public policy, issue preclusion should not be applied to this case, which, according to her, involves Fundación's perpetration of a "fraud" "to evade responsibility and eventually justice." We are unpersuaded by L.C.V.'s public-policy argument.

For starters, the cases on which L.C.V. relies apply Puerto Rico law of preclusion. See Barreto-Rosa v. Varona-Mendez, 470 F.3d 42, 48 (1st Cir. 2006) (recognizing that, under Puerto Rico law, res judicata "may not apply if . . . public policy demands an exception," but noting that "[t]his exception was successfully argued in [only] two cases" and concluding that

"[p]ublic policy does not demand an exception in this case"); Medina v. Chase Manhattan Bank, N.A., 737 F.2d 140, 144 (1st Cir. 1984) (similar); Bonafont Solís v. Am. Eagle, 143 D.P.R. 374, 429-30 (1997) (Berlingeri, J., dissenting) (discussing public-policy exception under Puerto Rico law of res judicata). But, as mentioned above, federal common law governs the application of issue preclusion in this case, and L.C.V. has not cited any cases applying a similar exception under federal principles of issue preclusion. In any event (and as noted earlier), she fails to meaningfully develop her argument that defendants fraudulently misled her. Therefore, we need say no more about this argument.

**g.** Finally, L.C.V. notes that the district court in Case No. 07-1032 retained jurisdiction to enforce the settlement agreement in that case and argues that the agreement's terms are enforceable against Fundación. But this argument is completely unresponsive to the issue-preclusion hurdle that L.C.V.'s claim against Fundación faces. The amended complaint asserts no claim to enforce the settlement agreement against Fundación. Instead, the claim asserted in count 1 against Fundación is one for medical malpractice as the owner or operator of Hospital Damas under Articles 1802 and 1803. And we've concluded that L.C.V. is barred under issue preclusion from relitigating the issue of whether Fundación was the true owner and operator, and, as we just spelled

- 34 -

out, L.C.V. has not offered us any developed, persuasive argument as to how she gets around the issue-preclusion bar.

* * *

Because L.C.V. fails to challenge the existence of several of the prerequisites of issue preclusion and because the arguments she does make are undeveloped, meritless, or both, we affirm the district court's entry of summary judgment in Fundación's favor on the claim that L.C.V. asserted against it in count 1.

**CONCLUSION**

For these reasons, we affirm the district court's entry of judgment in favor of both defendants. Each party shall bear its own costs.[28]

---

[28] We deny Fundación's meritless request that we impose sanctions on plaintiffs for filing a frivolous appeal. See In re Efron, 746 F.3d 30, 37 (1st Cir. 2014) ("An appeal is frivolous if the arguments in support of it are wholly insubstantial and the outcome is obvious from the start. Put another way, an appeal is frivolous 'when the appellant's legal position is doomed to failure — and an objectively reasonable litigant should have realized as much from the outset.'" (emphasis added) (citation omitted) (quoting Toscano v. Chandris, S.A., 934 F.2d 383, 387 (1st Cir. 1991))); id. at 38 ("[A]n appeal can be weak, indeed almost hopeless, without being frivolous . . . ." (alteration in original) (quoting Lallemand v. Univ. of R.I., 9 F.3d 214, 217-18 (1st Cir. 1993))).